UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SEMYON KREMER, | Civil Action No. 3:18-cv-03676 (FLW) |
| Plaintiff, | **OPINION** |
| v. | |
| PETR LYSICH, ALEXEY LYSICH, IGOR FEDORENKO, PROTOGROUP, INC., INKVIST, INC., SMILE LAND, INC., | |
| Defendants. | |

**WOLFSON, United States District Chief Judge**:

This matter comes before the Court on Defendants' Petr Lysich ("P. Lysich"), Alexey Lysich ("A. Lysich"), Protogroup, Inc. ("Protogroup"), Inkvist, Inc. ("Inkvist"), and Smile Land Inc.'s ("Smile Land") (collectively, "Defendants" or "Protogroup Defendants") motion, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss the action initiated by Plaintiff Semyon Kremer ("Plaintiff"), or, in the alternative, transfer the case to the United States District Court for the Middle District of Florida – Jacksonville Division. For the following reasons, Defendant's motion to transfer is granted pursuant to 28 U.S.C. § 1404(a) and this matter is transferred to the Middle District of Florida – Jacksonville Division.

I.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In addressing Defendant's Motion to Dismiss, this Court must accept the allegations from Plaintiff's Complaint as true. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir.

1

2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)[1]. Thus, the facts recited below are taken from the Complaint and do not represent this Court's factual findings.

The instant action is a minority shareholder oppression suit against the Protogroup Defendants and Igor Fedorenko[2] ("Fedorenko"), stemming from Plaintiff's involvement as a minority shareholder in Inkvist and Smile Land.

In 2005, Defendant P. Lysich visited Plaintiff's New Jersey home and presented him with a business opportunity. Compl. ¶35. Plaintiff agreed to become an officer and director of any corporate entities created by P. Lysich, A. Lysich, or Fedorenko, and was to receive a salary and a certain percentage of shares of stock of any of the entities. Compl. ¶¶ 38-41. Plaintiff's role in the organization consisted of, among other things, negotiating with lenders and financial institutions, and generally providing professional services to any of Defendants' corporate entities – many of these activities were conducted from his New Jersey residence. Compl. ¶39-43.

In 2007, Kremer, allegedly at P. Lysich's behest, incorporated Inkvist DE, a Delaware corporation which is 80% owned by Defendant Fedorenko and 20% owned by Plaintiff. Compl. ¶¶ 58-59. In July 2007, Defendant P. Lysich also allegedly instructed Plaintiff to incorporate a company in Palm Coast, Florida called "Smile Land, Inc," whose purpose was to engage in the purchase of land in Florida. Compl. ¶¶ 64-65. At its inception, Plaintiff received forty shares of Smile Land, equal to twenty percent of the issued shares, and Smile Land purchased slightly over four acres of land in Palm Coast, Florida with the objective of building a franchise hotel. Compl. ¶¶ 66-67. Thereafter, Plaintiff entered into negotiations with Days Inns Worldwide, a company

---

[1] In considering a motion to transfer venue, the Court may also consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973).

[2] Fedorenko has not joined in the Protogroup Defendants' motion

based in Parsippany, New Jersey, to acquire a hotel for the land in Palm Coast, Florida. Compl. ¶¶ 69-71, 81. Plaintiff participated in the negotiations and subsequent management of the hotel planning from New Jersey. *Id*. Smile Land and Days Inns Worldwide, on December 11, 2007, entered into a franchise agreement to build a hotel in Palm Coast, Florida; the franchise agreement is governed by New Jersey law. Compl. ¶¶ 76-77.[3]

In 2011, A. Lysich and P. Lysich invited Plaintiff to Florida to discuss Smile Land's plans, including the development of a property in Daytona Beach, Florida ("Daytona Project"). Compl. ¶¶ 89-94. Defendants informed Plaintiff that they would form a new corporation, Protogroup, to own and develop the Daytona Project, and that while Plaintiff would derive an economic benefit from Protogroup, that he would not be an official shareholder. Compl. ¶¶ 96-98. P. Lysich advised Plaintiff that he would continue to remain a minority shareholder in Smile Land, and that in addition to deriving an economic benefit, he would serve as Protogroup's Vice President, rather than, an official shareholder of record. Compl. ¶ 100 Further, Plaintiff was allegedly assured that he would continue to receive actual compensation for his work for both Smile Land and Protogroup regardless of their financial performance. Compl. ¶ 101. After the meeting, Plaintiff returned home and began working on the Daytona Project in New Jersey. Compl. ¶¶ 102-103.

Thereafter, A. Lysich and P. Lysich, allegedly, directed Plaintiff to use Smile Land and Protogroup as aliases of one another in searching for funding for the Daytona Project. Compl. ¶ 104. According to Plaintiff, he received payments from Smile Land until December 2014, at which time the payments began to come from Protogroup. Compl. ¶¶ 109-110. Payments from Protogroup continued through September 2016. Compl. ¶ 111.

---

[3] Days Inn Worldwide is not a named party in the current action, nor is the franchise agreement directly relevant to any of Plaintiff's claims.

Unbeknownst to Plaintiff, A. Lysich allegedly caused Smile Land to pay $710,000 to Solinger Trading Company ("Solinger"), a company that would later be discovered via IRS audit to be a shell company located in the Bahamas. Compl. ¶¶ 112-115. A. Lysich allegedly prepared a back dated agreement between Smile Land and Solinger, where Solinger would receive a 1% agency fee for the purchase of international produce. Compl. ¶ 120. Plaintiff alleges that A. Lysich demanded that Plaintiff sign and backdate the agreement and provide it to the IRS, but when Plaintiff refused, his relationship with A. Lysich abruptly ended. Compl. ¶¶ 121-123.

After refusing to carry out A. Lysich's alleged scheme, Plaintiff alleges that he stopped receiving monthly payments from Smile Land and Protogroup, and was notified that he was being removed as the director of the two entities, and stripped of his signatory powers for Smile Land. Compl. ¶¶ 124-127. Moreover, Plaintiff allegedly discovered that Protogroup broke ground on the Daytona Project and that A. Lysich had claimed that Protogroup owned the Days Inn in Palm Coast, rather than Smile Land. Compl. ¶¶ 138-139. Additionally, Plaintiff alleges that over $300,000 had been withdrawn from Smile Land's bank account. *Id*. Plaintiff subsequently demanded an accounting from Defendants, regarding the withdrawn funds, but has not been provided one. Compl. ¶¶ 143-146.

Subsequently, on March 16, 2018, Plaintiff filed the instant complaint alleging, breaches of fiduciary duty and minority shareholder oppression by Defendants A. Lysich and Fedorenko, conversion, civil conspiracy, wrongful termination, retaliatory conduct in violation of the New Jersey Conscientious Employee Act ("NJCEPA"), unjust enrichment, breach of contract claims against all Defendants, and seeking an accounting of Smile Land, Inkvist DE, and Protogroup accounts. Compl. ¶¶ 156-269. Now the Protogroup Defendants have filed the instant motion to dismiss, or in the alternative, to transfer.

## II. DISCUSSION

Defendants move to dismiss this matter for lack of personal jurisdiction and improper venue, or alternatively, transfer of venue to the Middle District of Florida – Jacksonville Division. Def. Br. at 3. Plaintiff, while maintaining the position that personal jurisdiction exists and that venue is proper in New Jersey, also urges this Court to allow jurisdictional discovery to determine if personal jurisdiction exists over Defendants. Pl. Br. at 3, 24. Plaintiff also opposes transferring this matter to the Middle District of Florida. Pl. Br. at 19-24.

While "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). Accordingly, the Court addresses the venue issue first, and because Defendants have demonstrated that a transfer of venue is appropriate under Section 1404(a), the Court does not reach the question of whether the Individual Defendants are subject to the exercise of personal jurisdiction by this Court.

A district court may transfer any civil action to any district where the action might have been brought in the interests of justice and for the convenience of the parties and witnesses. 28 U.S.C. § 1404(a). The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The burden of establishing that transfer is warranted is borne by the moving party. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981); *Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993). The moving party must show that the proposed alternative forum is not only adequate, but also more convenient, than the present forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Section 1391 provides the guidelines for determining where venue is appropriate. *See* 28 U.S.C. § 1391(a). Under Section 1391, venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district where a substantial part of the events or omissions giving rise to the claim occurred ..., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." *Id*. A defendant that is a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id*. § 1391(c). If the proposed alternative forum is appropriate, it is then within the Court's discretion to transfer the action. *Jumara*, 55 F.3d at 883.

Three factors guide the Court's discretion when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a) and *Jumara,* 55 F.3d at 879 )). These factors are not exclusive and must be applied on an "individualized analysis . . . made on the unique facts presented in each case." *Id.* at 526-27 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara,* 55 F.3d at 879-80. As set forth below, a balance of the pertinent private and public interests, and consideration of the interests of justice, indicates that transfer of this matter to the United States District Court for the Middle District of Florida is appropriate.

### A. The Propriety of the Proposed Venue

The Court must first determine whether the proposed venue is an appropriate forum. 28 U.S.C. § 1391(a). Here, Section 1391(a)(1) does not apply because all the Defendants do not reside in the same state. However, Plaintiff's Complaint suggests that "a substantial part of the

events or omissions giving rise to [his claims]" occurred in Florida. *See e.g.*, Compl ¶94-99 (discussing Florida meeting where Defendants promised that Plaintiff would continue to derive economic benefit from Protogroup, despite Plaintiff's exclusion from official shareholder registry); *id*., ¶79-80 (describing Smile Land's construction of Days Inn Hotel in Palm Coast, Florida) *id*., ¶92 (describing Defendants' desire to pursue real estate development project in Daytona Beach, Florida.); *id*. ¶112-120 (describing Smile Land's, a Florida corporation, transfer of funds to a Bahamian entity.) Accordingly, venue would be proper there pursuant to Section 13191(a)(2). 28 U.S.C. § 1391(a)(2). Furthermore, even if a substantial part of the events had not occurred in Florida, venue would nonetheless be proper in the Middle District of Florida, pursuant to Section 1391(a)(3) which provides that venue is proper in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(a)(3). Four of the six defendants, P. Lysich, A. Lysich, Protogroup, and Smile Land are indisputably subject to personal jurisdiction in the Middle District of Florida, as they each respectively reside or have their principal place of business in Palm Coast, Florida. Therefore, the Middle District of Florida is an appropriate venue.

### B. Convenience of the Proposed Venue

#### 1. The Private Interests Weigh in Favor of Transfer.

Under Section 1404(a), a court should consider the following private factors:

(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

7

*Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.,* 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879) (internal quotations omitted). The Court finds that all of these factors are either neutral or weigh in favor of transfer.

### i. Plaintiff's Forum Preference as Manifested in the Original choice, Defendant's Forum preference, and Whether the Claim Arose Elsewhere

While a plaintiff's choice of forum is a "paramount concern" that is considered "presumptively correct," *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 452 (D.N.J. 1999), "[t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Liggett*, 102 F. Supp. 2d at 530. When the dispute central to a lawsuit arose from events that occurred almost exclusively in another state, as is the case here, courts give substantially less weight to the plaintiff's forum choice. *Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) (holding that a plaintiffs choice of venue is not "decisive," and that the choice is accorded less deference "when the central facts of a lawsuit occur outside of the chosen forum").

Plaintiff's decision to file suit in New Jersey and his opposition to Defendant's transfer request, indicates a strong preference to litigate in New Jersey, his home venue. Defendants have expressed a preference for the Middle District of Florida. *See* Def. Br. at 17-25. Plaintiff argues that the claims arose in New Jersey because Defendants sought out Plaintiff, who is a New Jersey resident, initiated, negotiated, and executed business dealings with Plaintiff, in the forum and Plaintiff conducted all of his business on Defendant's behalf from New Jersey. Pl. Br. 5-6, 22.

However, many of the operative facts underlying Plaintiff's Complaint occurred outside of New Jersey, including the retaliatory measures allegedly design to punish Plaintiff for his refusal to participate in Defendant's tax evasion scheme, Plaintiff's wrongful termination, Defendant A. Lysich's decision to transfer Smile Land Funds to an offshore shell company, and the subsequent

8

transfer of funds out of Smile Land's accounts. *See* Compl. ¶¶ 96-155. Although the negotiation and execution of the initial oral agreement, pursuant to which Plaintiff joined the Corporate Entities, and Plaintiff's work on behalf of the Defendant entities occurred in New Jersey, *see* compl. ¶35-43, the execution of the contract has little bearing on Plaintiff's claims. Rather, Plaintiff's claims for conversion, unjust enrichment, and shareholder oppression all involve actions taken by Defendants A. Lysich and P. Lysich in their state of residence – Florida. *See* Affidavit of Peter Lysich ("Lysich Aff.") ¶¶1,4. Further, the conduct underlying Plaintiff's claims for breach of contract, breach of fiduciary duty, and wrongful termination concern business decisions made by individuals in Florida, on behalf of Florida and Delaware corporations, as well as the promises made to Plaintiff by A. Lysich and P. Lysich regarding his role in Protogroup and the Daytona Project, during the 2011 meeting which occurred in Florida. Accordingly, the lawsuit arose from events that occurred almost exclusively in Florida. Thus, the Court accords little weight to Plaintiff's choice of New Jersey as the forum and finds that the first three factors weigh in favor of transfer.

### ii. Convenience of the Parties

P. Lysich[4] and A. Lysich are Florida residents; Protogroup, Inc. and Smile Land are Florida corporations; and Inkvist is Delaware corporation. Compl. ¶¶ 11, 13-15. Plaintiff is a resident of New Jersey. Compl. ¶ 10. Regardless of the forum, either Plaintiff or Defendants would be required to travel to participate in the litigation. Both Plaintiff and the individual Defendants are more than capable of traveling between New Jersey and Florida – in fact, the record

---

[4] Although Defendant P. Lysich maintains a residence in Florida, he is a Russian citizen who resides primarily in Russia. Pl. Br. at 22. Defendant Fedorenko, a non-movant, is also a Russian citizen and resident. *Id*.

currently before the Court reveals that both Plaintiff and the two individual movants, P. Lysich and A. Lysich traveled to both states on various occasions. Thus, this factor is neutral.

### iii. Convenience of the witnesses

The convenience of the witnesses must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Plaintiff argues that his witnesses, including "brokers," are located in Pennsylvania and New York, within driving distance of New Jersey. Pl. Br. at 22-23. On the other hand, Defendants assert that Al Schulz, Protogroup's accountant; John Smarsh, the general manager of the Days Inn operated by Smile Inc.; and Justyna Mueller, a Certified Public Accountant residing in Florida, are all witnesses who could not be compelled to appear in New Jersey. Def. Br. at 21. Plaintiff responds that some of Defendant's potential witnesses were not present when the events giving rise to the action occurred, and so would presumably not be called as witnesses. Pl. Br. at 23. While the parties have not addressed the importance of the individual witnesses, many of the non-party witnesses appear to be in Florida, and would fall outside the subpoena power of this Court. Accordingly, this factor weighs slightly in favor of transfer.

### iv. Location of books and records

The Court must also consider "the location of books and records (only to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Plaintiff argues that much of the relevant evidence is located in New Jersey, in Plaintiff's possession. Pl. Br. at 23. However, Plaintiff's Complaint seeks an accounting of the defendant entities, and many of the relevant documents are likely in Florida, where the majority of the entities have their principle place of business and where their accountants are located. Furthermore, regardless of their current location, the evidence in this action is likely to be paper contracts, evidence of bank wires or

cancelled checks, e-mails communications, or other documentary records that could be transmitted electronically or easily shipped. Furthermore, Plaintiff does not contend that evidence would be unavailable in either fora and, therefore, this factor carries little weight and is in equipoise.

### C. The Public Interests Weigh in Favor of Transfer

Under Section 1404, the public interests a court should consider include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879-80) (internal quotations omitted).

#### i. Enforceability of the judgments

Neither party has suggested that a judgment rendered in this case in one forum would not be enforceable in the other and, accordingly, this factor does not weigh in favor of either forum. *See* Moore's Federal Practice — Civil § 111.13 ("[W]hen both forums are federal district courts, this factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." (citing *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F. Supp. 446, 450 (W.D.N.C. 1989)).

#### ii. Practical considerations that could make the trial easy, expeditious, or inexpensive and court congestion

Both practical considerations regarding scheduling and coordinating the witnesses' availability and court congestion weigh in favor of transferring this matter to Florida. Neither party has suggested that litigating in the other forum would be unduly cost-prohibitive or

burdensome, however, as noted above, a number of the non-party witnesses are located in Florida, as are several of the defendants. Consequently, coordinating schedule and traveling arrangements are likely to be less burdensome if this matter is litigated in Florida.

Relative to the comparative congestion of dockets in the two districts, Defendants have provided a chart outlining the number of cases filed, terminated, and pending in each jurisdiction, including 17,686 pending cases in New Jersey and 8,242 pending in the Middle District of Florida as of December 31, 2017. Def. Br., Ex. 2. Indeed, a more recent version of that report, providing caseload statistics as of December 31, 2018, presents a starker difference. As of that date, the number of pending cases in New Jersey had risen to 24,074, whereas the number in the Middle District of Florida had fallen to 6,294. *See* U.S. Courts, "Civil Statistical Tables For The Federal Judiciary (December 31, 2018)," https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2018/12/31.

Plaintiff contends the cited statistics do not demonstrate that the District of New Jersey is overwhelmed with cases or that transferring this matter to the Middle District of Florida would lead to a more expeditious result. Pl. Br. at 23. The Court disagrees. The U.S. Court's Statistics and Reports speak for themselves and clearly indicate that court congestion has increased in New Jersey, while it steadily decreased in the Middle District of Florida. The relative congestion of dockets in the two districts suggests that in the Middle District of Florida this action is likely to proceed to trial, or otherwise reach its resolution, more quickly than in this Court.

Thus, this factor weighs in favor of transfer.

### iii. Local interest in Deciding Local Controversies at Home, Public Policies of the Fora and Familiarity of Local Judges with Applicable State law

New Jersey indisputably has an interest in protecting Plaintiff's interests, as he is a New Jersey resident. However, the instant action involves two Florida corporations, and a Delaware

corporation, none of which do business in New Jersey. Florida has a significant interest in regulating how the businesses in its state operate, including how they treat their shareholders, thus Florida has a significant interest in "having a local controversy decided at home." *Jumara,* 55 F.3d at 879–80. Furthermore, the central facts of the lawsuit occurred in Florida, or involve conduct by the individual Defendants, who all reside in Florida, at least part time. The lawsuits' only connection to New Jersey is that this is where Plaintiff resides. The burden of jury duty should not be placed on citizens with a remote connection to the lawsuit. *See Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 478 (D.N.J. 1993) ("New Jersey jurors should not be burdened with adjudicating a matter ... stemming from conduct which is/was largely localized in Minnesota and Illinois"). In light of the greater interest that Florida and its residents have in this litigation, the burden of jury duty is more fairly placed upon them. Accordingly, this factor weighs in favor of transferring venue.

Neither party has suggested there are public policy concerns in either forum which require that the case be heard in one forum over the other, and thus, that factor is neutral.

Finally, while familiarity of the forum court with the applicable law is a consideration, it is not enough that a court might have to apply another jurisdiction's law. *See Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,* 847 F. Supp. 1244, 1247 (D.N.J.1994). In this instance, the forum court would likely have to apply both New Jersey and Florida law. Plaintiff has alleged a NJCEPA claim, which would be governed by New Jersey law, while the breaches of fiduciary duty claims would be governed by the law of the state where the entities are incorporated --- in this case, Delaware and Florida. Accordingly, that factor is neutral.

**D. Interests of Justice**

Defendants have met their burden to show a transfer to the Middle District of Florida is warranted. Taking into account the private and public interest factors and the interests of justice, as well as all relevant practical interests, the Court is persuaded, by the number and gravity of events having occurred in and many of the witnesses being located in Florida, that Defendants met their burden in demonstrating this matter should be transferred to the Middle District of Florida.

## III.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer is **GRANTED** and this matter is transferred to the United States District Court for the Middle District of Florida.

Dated: June 30, 2019                                            s/ Freda L. Wolfson

                                                                                      Freda L. Wolfson
                                                                                      U.S. Chief District Judge